UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PATRICIA WILSON, | ) |
| Plaintiff | ) ) ) |
| v. | ) No. 2:02-CV-003 PS ) |
| JOHN E. POTTER, Postmaster General of the United States, | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

The parties settled this matter in May 2004 and the Court dismissed it shortly thereafter. More than a year later, Plaintiff Patricia Wilson filed a Motion to Set Aside Order of Dismissal, which is now before the Court. [DE 61] Wilson alleges that she agreed to settlement and the voluntary dismissal of her claim against Postmaster General John E. Potter based on the mistaken assumption that the United States Postal Service had denied her application for disability retirement. Wilson says that if she knew then what she learned later (*i.e.* that her application for disability retirement had been granted), she never would have settled for the amount that she did. Wilson's claim, however, is belied by the fact that she received nearly $50,000 in disability retirement payments *before* she agreed to settle her claim. As explained below, Wilson's motion is denied because it is untimely and lacks merit.

## FACTS

### A. Settlement and Dismissal Order

On January 29, 2002, Patricia Wilson filed suit against Postmaster General John E. Potter, alleging that her termination from the United States Postal Service ("Postal Service") was unlawful. [DE 3]  On May 13, 2004, the Court held a pre-trial conference.  That same day, the parties agreed to settle Wilson's claim.  [DE 59]

In exchange for a dismissal with prejudice, the Postal Service agreed to pay Wilson $35,000 in compensatory damages and 2441 hours worth of back pay, the minimum amount necessary for Wilson to apply for normal retirement.  The settlement agreement further provided that Wilson may not seek to set aside the agreement if a dispute arose over the implementation of its terms.  Instead, Wilson's sole remedy was to seek enforcement of the terms and conditions of the agreement.

On May 17, 2004, the Court entered a dismissal order.  [DE 60]  The order provided that the dismissal was without prejudice for 30 days and that if settlement was not consummated within that 30-day period, the parties could reinstate the case upon motion approved by the Court.  If no motion was filed within the 30-day period, the dismissal would become a dismissal with prejudice.  No motion was filed in the 30-day period.  Wilson executed the settlement agreement on July 20, 2004.

### B. Wilson's Disability Retirement Award

In August 2004, the Postal Service began to process the paperwork necessary to implement the terms of the settlement agreement.  During this process, the Postal Service learned that the Office of Personnel Management ("OPM") approved Wilson's application for disability retirement in March 2004 and had already paid Wilson a lump sum disability award

2

(gross amount of $58,000) for the same period of time as the back pay award covered in the settlement agreement.  On August 25, 2004, the Postal Service advised Wilson's counsel that Wilson had already received disability retirement payments.

On September 22, 2004, the Postal Service sent retirement and backpay applications to Wilson's attorney for Wilson to complete.  On September 27, 2004, the Postal Service advised Wilson that in order for her to take normal retirement as provided in the settlement agreement, Wilson's prior disability retirement payments would have to be offset by the amounts she otherwise would receive under the settlement agreement.  In December 2004, Wilson responded that she did not want to complete the application forms necessary to implement the settlement.

Upon her termination from the Postal Service, Wilson had applied for disability retirement based on her 28 years of service and her disability.  On March 17, 2004, approximately two months before the May 13, 2004 settlement conference, the OPM mailed a letter to Wilson at her address of record, notifying her that her application for disability retirement had been approved. [DE 68, Ex. 3, ¶ 2; Ex. 3-A.]  Wilson denies receiving the letter.  However, on April 14, 2004, the OPM set up a direct deposit account at Centier Bank for Wilson's disability retirement payments.  The next day, the OPM deposited into Wilson's account a lump sum of $46,017.97 (the $58,000 less taxes and insurance) in disability retirement for the period of April 21, 2001 to March 30, 2004.  [DE 68, Exs. 2-D; 2-E]  Wilson also received a monthly disability payment in the amount of $1,548.75 on April 30, May 28, June 30, and July 30, 2004.  *Id*.

According to her bank statements, Wilson's bank account had a balance of $155.91 on April 6, 2004.  Over the course of the next month, three deposits were made to the account:  1) one from "US Treasury 312 Civil Serv" in the amount of $46,017.97; 2) one from "US Treasury

3

312 Civil Serv" in the amount of $1,548.75; and 3) a miscellaneous deposit in the amount of $600. [DE 68, Exs. 2-C; 2-D] Between April 6 and May 5, 2004 (the end of the statement period), the withdrawals from Wilson's bank account totaled $1,910.17. Thus, without the deposits from the United States Treasury, Wilson would have overdrawn her account during the statement period. *Id*.

### C. Wilson's Present Motion

On May 19, 2005, a little more than a year after the dismissal order was entered, Wilson filed a Motion to Set Aside Order of Dismissal pursuant to Federal Rules of Civil Procedure 60(b) (1), (2), (3) and (6). [DE 61] Wilson argues that: (1) when she agreed to settle the case, she was not aware that her application for disability retirement had been granted, and had she known this, she would have not agreed to settle; (2) the Postal Service "may have" negotiated the settlement in bad faith because the Postal Service representative who participated in settlement negotiations was a Personnel Director, and the decision to grant Wilson disability retirement came from the Office of Personnel Management; and (3) the Postal Service breached the settlement agreement by failing to pay Wilson compensatory damages as provided in the agreement.

The Postal Service responded to Wilson's motion on August 17, 2005. [DE 68] On September 6, 2005, Wilson's counsel withdrew from the case and Magistrate Judge Andrew P. Rodovich granted Wilson additional time to file her reply brief. [DE 72] On September 27, 2005, Attorney Frederick Work appeared on behalf of Wilson. [DE 76] However, neither Wilson nor Work appeared at a status conference on October 31, 2005. At the next status conference on November 29, 2005, Attorney Work was present and Judge Rodovich ordered

4

Wilson either to withdraw her motion or to file her reply brief on or before January 20, 2006. [DE 81]  Wilson did neither.

## DISCUSSION

### A.   Rule 60(b) Standard

Federal Rule of Civil Procedure 60(b) governs Wilson's motion.  Under that rule, a court may relieve a party from a final order for the following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;

(2)   newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3)   fraud, . . . misrepresentation, or other misconduct of an adverse party; or

(6)   any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b)(1)-(3), (6).

Relief under Rule 60(b) is an extraordinary remedy granted only in exceptional circumstances.  *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)).  In assessing whether relief is appropriate, the court must balance the competing policies of determining cases on their true merits against the desire to preserve *res judicata* and achieve finality in litigation.  Wright, Miller & Kane, *Federal Practice and Procedure* § 2857 (1995).  Relief under Rule 60(b) is "essentially equitable in nature and is to be administered upon equitable principles." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir. 1984). Accordingly, a court has wide discretion in determining whether a case should be reinstated under Rule 60(b).  *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (district

court's decision not to reinstate a case under Rule 60(b) is "discretion piled on discretion") (internal quotes omitted).

All motions under Rule 60(b) must be brought within a "reasonable time." FED. R. CIV. P. 60(b). However, a motion brought under Rule 60(b)(1), (2), and (3) must be filed no later than one year after the disputed order was entered. *Id*. This time limit is jurisdictional; the district court may not extend the time to file a motion under Rule 60(b)(1), (2) or (3) beyond one year, even if the delay in filing was reasonable. *Brandon v. Chicago Bd. of Educ.*, 143 F.3d 293, 295-96 (7th Cir. 1998) (affirming denial of relief under Rule 60(b) where defendant filed motion one year and three days after judgment was entered against him); *United States v. Deutsch*, 981 F.2d 299, 302 (7th Cir. 1992).

If a motion can be brought under Rule 60(b)(1), (2), or (3), a party may not use the "catchall" provision of Rule 60(b)(6) to avoid the one-year time limitation. *Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 393 (1993) (the provisions for relief under Rule 60(b) are "mutually exclusive"); *Lowe v. McGraw Hill Co.*, 361 F.3d 335, 342 (7th Cir. 2004) (a party bringing a motion under Rule 60(b)(6) "musn't be allowed to override the one year limitation provided in rules 60(b)(1), (2), and (3)"). Therefore, a court must first determine whether any of the alleged grounds fit within subsections (1), (2), or (3), before analyzing any remaining grounds under subsection (6). *Brandon*, 143 F.3d at 295-96.

      **B.**    **Wilson's Claims Under Rule 60(b)(1), (2), and (3)**

The majority of Wilson's arguments fall within subsections (1), (2), and (3) of Rule 60(b). Wilson's first argument, that she only consented to settlement and dismissal of the case because she mistakenly believed that her application for disability retirement had been denied, clearly falls within either Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect")

or Rule 60(b)(2) ("newly discovered evidence").  Her second argument, that the Postal Service "may have" negotiated the settlement in bad faith, falls under Rule 60(b)(3) ("fraud . . . misrepresentation, or other misconduct by an adverse party").

Wilson filed her Rule 60(b) motion more than one year after entry of the Court's dismissal order.  The Court signed the dismissal order on May 13, 2004 and entered it on May 17, 2004.  Wilson filed her Rule 60(b) motion on May 19, 2005, more than one year later.  As stated previously, all claims under Rule 60(b)(1), (2), or (3) must be brought within one year of the date of the order at issue.  Fed. R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken."); *Brandon*, 143 F.3d at 295-96.  Consequently, the Court lacks jurisdiction to hear Wilson's claims under Rule 60(b)(1), (2), or (3).[1]  *See id*.

Even if Wilson's Rule 60(b)(1), (2), and (3) claims were timely, they nonetheless lack merit.  Wilson's discovery that the Postal Service had granted her application for disability retirement does not rise to the level of "mistake" contemplated under Rule 60(b)(1).  *See McCormick*, 230 F.3d at 327-28 (where settlement between plaintiff and two individual police officers was conditioned on obtaining approval of the Fraternal Order of Police, the Fraternal Order's refusal to consent was "unexpected" but not sufficient grounds to vacate the dismissal order after the time limit to reinstate case had passed).  "When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."  *Id*. at 327 (quoting *United States v. Bank of New York*, 14

---

[1] The fact that Wilson did not sign the settlement agreement until July 20, 2004 does not render her Rule 60(b)(1), (2), and (3) claims timely.  Rule 60(b) clearly states that a motion pursuant to subsections (1), (2), or (3) must be made "not more than one year after the judgment, order, or proceeding was entered or taken."  Fed. R. Civ. P. 60(b).  Thus, the relevant date is the date of the dismissal order.

7

F.3d 756, 759 (2d Cir. 1994)); *see also Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir. 1980) ("[Rule 60(b)] is not intended to enable litigants to avoid the consequences of a decision to settle or compromise which in retrospect appears unfortunate."). When Wilson agreed to settle this case, she already had received nearly $50,000 in disability retirement.  Her assertion that she was not aware at the time of settlement that her application for disability retirement had been granted is not credible.  Even if it were true, it is insufficient to warrant relief under Rule 60(b)(1).

Similarly, the fact that Wilson's application for disability retirement had been granted does not constitute "newly discovered evidence" under Rule 60(b)(2).  To prevail under Rule 60(b)(2), the moving party must present newly discovered evidence that could not have been previously discovered with due diligence.  Fed. R. Civ. P. 60(b)(2); *Publicis Commc'n v. True North Commc'ns., Inc.*, 206 F.3d 725, 730 (7th Cir. 2000).  At the time she agreed to settlement, Wilson could have learned that she had been granted disability retirement by merely checking the balance in her bank account.  Even if she did not receive the March 17, 2004 letter from OPM notifying her that her claim for disability retirement had been granted, she easily could have discovered the status of her claim with due diligence.

Furthermore, Wilson's motion fails under Rule 60(b)(3).  To set aside an order pursuant to Rule 60(b)(3), the moving party must establish the existence of fraud or other misconduct by clear and convincing evidence.  *Provident Savings Bank v. Popovich*, 71 F.3d 696, 699 (7th Cir. 1995).  Wilson alleges that the Postal Service "may have" negotiated the settlement in bad faith because the Postal Service representative who participated in settlement negotiations was the Personnel Director and the decision to grant her disability claim came from the Office of

Personnel Management.  Wilson's claim is speculative and she presents no evidence to support her allegations.  This is not sufficient to obtain relief under Rule 60(b)(3).

Moreover, Wilson's own bank records demonstrate that she either knew or should have known that her application for disability retirement had been approved when she agreed to settlement and dismissal on May 13, 2004.  On April 6, 2004, Wilson's bank account records reflect that she had an account balance of $155.91.  [DE 68, Exs. 2-C, 2-D]  Over the course of the next month, three deposits were made to the account:  one from the United States Treasury in the amount of $46,017.97 (lump sum payment for Wilson's past-due disability retirement); a second deposit from the United States Treasury in the amount of $1,548.75 (Wilson's monthly disability retirement payment); and a miscellaneous deposit in the amount of $600.  *Id*.  The withdrawals from the account during the same statement period totaled $1,910.17.  *Id*.  Thus, without the disability payments from the United States Treasury, Wilson would have overdrawn her bank account by more than $1,000.  This strongly suggests that by May 13, 2005, Wilson knew or should have known that her application for disability retirement had been granted.

      **C.**    **Wilson's Rule 60(b)(6) Claim**

As stated above, Wilson may not use the catchall provision of Rule 60(b)(6) to bring any claims that could otherwise be brought under Rule 60(b)(1), (2), or (3).  Wilson's only remaining claim is that the Postal Service's refusal to pay her ordinary retirement and compensatory damages constitutes a breach of the settlement agreement and warrants setting aside the dismissal order.

While a Rule 60(b) movant already carries the burden of showing that they are entitled to this type of extraordinary relief, "Rule 60(b)(6) is [an] even more highly circumscribed exception in a rule already limited to exceptional circumstances."  *Neuberg v. Michael Reese*

9

*Hosp. Foundation*, 123 F.3d 951, 955 (7th Cir. 1997) (citation omitted).  A dispute over the terms of the settlement agreement is not sufficient to vacate dismissal under Rule 60(b)(6).  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) (dispute over the interpretation of a settlement agreement is a legal matter distinct from the underlying litigation); *see also Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002) ("once a suit is dismissed with prejudice, the judge loses all power to enforce the terms of the settlement that may lie behind that dismissal.")  The Seventh Circuit has suggested in dicta that the complete repudiation of a settlement agreement could be the kind of extraordinary development to justify Rule 60(b)(6) relief.  *Neuberg*, 123 F.3d at 954 (citations omitted).

Additionally, even though Rule 60(b)(6) is not subject to the strict one-year time limit of Rule 60(b)(1), (2), and (3), any Rule 60(b)(6) motion must still be made within a reasonable time.  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).  In determining whether any delay in bringing a 60(b)(6) motion was reasonable, courts must consider the interest in finality, reason for delay, the practical ability of the party to learn of the grounds relied upon, and the consideration of prejudice to the parties.  *Ingram v. Merrill Lynch*, 371 F.3d 950, 952 (7th Cir. 2004).

Here, Wilson alleges she did not learn that her request for disability retirement had been granted until December 2004 when the Postal Service advised her lawyer of the fact.  Wilson filed her motion on May 19, 2005.  Thus, even under Wilson's version of the facts, she waited six months to file her Rule 60(b) motion.  Wilson offers no reason for this delay.  Thus, based on the record, the Court finds the delay to be unreasonable.  *See McCormick*, 230 F.3d at 327-28 (a three-month delay, after the 60-day window for reinstatement without prejudice had passed, was not reasonable; the movant should have sought reinstatement "as soon as she learned that a

10

condition of the settlement agreement would not be met"); *Lyles v. Commercial Lovelace Motor Freight*, 684 F.2d 501, 503-504 (7th Cir 1982) (nine-month delay in seeking reinstatement after parties had reached oral settlement agreement was not reasonable).

Even if Wilson had filed her motion within a reasonable time, she is not entitled to relief under Rule 60(b)(6). Wilson has not demonstrated a complete repudiation of the settlement agreement sufficient to justify relief under Rule 60(b)(6). The Postal Service has indicated it is willing and ready to pay Wilson the amounts agreed to in the settlement contract, provided that Wilson complete the necessary paperwork to receive normal retirement and return or offset the disability retirement payments she already has received. The Postal Service has indicated further that if Wilson foregoes the normal retirement payments contemplated by the settlement agreement, it would tender to her the agreed-upon $35,000 in compensatory damages. [DE 68 at 13.] This is not a complete repudiation of the settlement agreement. *See Neuberg*, 123 F.3d at 954-55. If Wilson reasonably believes that the Postal Service has breached the settlement agreement, she is free to file a lawsuit for breach-of-contract. Rule 60(b), however, provides her no relief.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Set Aside Order of Dismissal [DE 61] is **DENIED**.

**SO ORDERED.**

ENTERED: March 9, 2006.

                                             s/ Philip P. Simon
                                             PHILIP P. SIMON, JUDGE
                                             UNITED STATES DISTRICT COURT